UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

                                                      **MEMORANDUM AND ORDER**

     -against-                                        21-CR-193 (KAM)


RICHARD DALE STERRITT, JR. et al.,

                              Defendants.
------------------------------------X

**MATSUMOTO, United States District Judge:**


On April 8, 2021, a grand jury returned a five-count
superseding indictment (the "Superseding Indictment") (ECF No.
177) charging five defendants with perpetrating interrelated
schemes to defraud securities investors and launder the
criminally derived proceeds.  Pending before this Court are pre-
trial motions by defendant Richard Dale Sterritt, Jr. to sever
the trial currently scheduled to begin on November 27, 2023; to
preclude the jury from reviewing a copy of the Indictment; and
to admit evidence pursuant to the rule of completeness.  (ECF
Nos. 257, 319.)  Also pending before this Court are motions in
limine by the government to preclude evidence or arguments
regarding any purported belief of no ultimate harm to investors;
to admit contracts and other agreements as verbal acts; to
preclude evidence or arguments concerning Sterritt's personal,
health, or family circumstances; to preclude evidence or
arguments of selective prosecution; to preclude evidence or

1

arguments that Sterritt relied on advice of counsel; to preclude evidence or arguments of the collateral consequences of a conviction; to provide notice of its intention to admit co-conspirator statements; to admit proffer-protected statements should the waiver provision of James Christopher Pittman's proffer agreement be triggered by the government; and to permit the testimony of an undercover federal agent under the alias the agent used throughout the government's investigation.  (ECF Nos. 258, 322.)  Finally, Sterritt moved in limine to assert an advice-of-counsel defense with respect to James Christopher Pittman, Andrew Stack, and seven (7) additional attorneys.  (ECF No. 304.)

Based on the court's review of the parties' motions, the case record, and the applicable law, and for the reasons set forth below, the government's motions in limine to preclude evidence or arguments of any purported belief regarding "no ultimate harm" to investors; to admit contracts and other agreements as verbal acts; to preclude evidence or arguments related to Sterritt's personal, health, and family circumstances; to preclude evidence or arguments that Sterritt relied on advice of counsel; to preclude evidence or arguments regarding the collateral consequences of a conviction; and to permit the testimony of an undercover agent by his alias are **GRANTED**.  The Court reserves ruling, at this time, on the

2

government's motions in limine to admit evidence of co-conspirator statements and Sterritt's request that the Court decline to provide the jury with a copy of the speaking indictment as **PREMATURE**.  Sterritt's motion in limine to assert an advice-of-counsel defense, based on the evidence proffered, is **DENIED**.  The Court will issue a separate Order regarding Sterritt's objections, pursuant to the rule of completeness. All other motions, including the government's remaining motions to preclude evidence or arguments regarding selective prosecution and to admit proffer-protected statements by Pittman, and Sterritt's motion to sever, are denied as **MOOT**.

## Background

The Court assumes the parties' familiarity with the extensive facts of this case, which were recounted in the Court's June 22, 2023 Order.  (ECF No. 239.)[1]  As of the date of this Order, all Defendants have entered guilty pleas with the exception of Richard Dale Sterritt, Jr., against whom each of five counts in the December 15, 2022 superseding indictment remain.  Most recently, Sterritt's former co-defendant James Christopher Pittman entered a plea of guilty at an October 13, 2023 change of plea hearing.  (ECF No. 314.)  In light of

---

[1] Definitions of all capitalized terms in the Court's June 22, 2023 Order (ECF No. 239), are incorporated by reference and apply to capitalized terms within the instant Order.

Pittman's guilty plea, all pre-trial motions and arguments related to Pittman are denied as moot.

As an initial matter, "[t]he purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted).  In assessing the instant motions in limine, the Court will exclude evidence "only if it is clearly inadmissible on all potential grounds."  *United States v. Mackey*, No. 21-cr-80 (NGG), 2023 WL 2457861, at *1 (E.D.N.Y. Mar. 10, 2023).  The Court may also reserve its decision on any motion in limine until trial if the Court finds that the trial setting would provide for a more "appropriate factual context." *Mackey*, 2023 WL 2457861, at *2.

## I.   The Government's Motion in Limine to Preclude Evidence or Arguments Regarding Any Purported Belief of "No Ultimate Harm" to Investors

In a securities fraud case where "an essential element of the crime charged is intent to defraud," a defendant's good-faith belief in the veracity and accuracy of his representations to investors may refute an assertion, by the government, that the defendant intended to defraud investors.  *See United States v. Alkins*, 925 F.2d 541, 550 (2d Cir. 1991) ("If an individual

4

believes that the information set forth in [an investor representation] is true, it follows that he cannot have the requisite intent to defraud.") *See also United States v. Graham*, No. 16-cr-786 (NSR), 2019 WL 2366724, at *3 (S.D.N.Y. May 31, 2019) ("The good faith defense[, which is] premised on the precept that a defendant charged with fraud acted in good faith and did not have the requisite inten[t] to defraud the victim . . . is a complete defense to a fraud charge.")

Courts in this circuit have repeatedly cautioned, however, that a defendant's good-faith belief that his or her representations are truthful is distinct from a defendant's belief that knowingly false statements will ultimately cause no harm, or even that such statements will ultimately benefit, investors. *See e.g. United States v. Watts*, 934 F. Supp. 2d 451, 470 (E.D.N.Y. 2013) ("a defendant's good-faith belief in the truth of his statements or representations is very different from a defendant's belief that his untrue statements or representations will ultimately cause no harm"); *United States v. Berger*, 188 F. Supp. 2d 307, 331-32 (S.D.N.Y. 2002) ("[the defendant's] alleged 'good-faith belief' that his investment strategy would ultimately be successful is not a plausible defense to intentionally misstating or failing to disclose material facts to investors").

Accordingly, any attempt to proffer evidence at trial that a defendant possessed a good-faith belief in the ultimate success of a knowingly fraudulent scheme, or that the defendant meant no harm, is improper.  In such circumstances, the Second Circuit has upheld a "no ultimate harm instruction . . . [to] ensure[] that jurors would not acquit if they found that the defendants knew the [alleged scheme] was a sham but thought it beneficial . . . in the long run." *United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011).

The government requests that this Court preclude any evidence or arguments that Sterritt seeks to present regarding his purportedly good-faith belief that there would be no ultimate harm to investors, as well as any attempt by Sterritt to point to evidence of the value of Zona Energy's assets to support the alleged belief.  (ECF No. 258 at 8-9.)  The government asserts that evidence of Sterritt's beliefs, in this respect, is irrelevant and will only serve to confuse and distract the jury, in light of the fact that any purported good-faith belief is not a defense to the charged offenses.  (ECF No. 258 at 8-9.)  The government further requests that the Court preclude evidence of a good-faith belief in the profitability of the Zona Energy Offering Fraud before the need for a jury instruction arises, and states that "[t]here is no reason to wait for the jury to hear such an improper argument, which would

6

only serve to mislead and confuse" the jury.  (ECF No. 258 at 9.)

Sterritt argues that he should not be precluded from presenting evidence of his "good-faith belief that Zona Energy would be profitable, that he had a solid basis for that belief, and that his belief that Zona would be profitable undermines the government's assertion that he intended to defraud investors." (ECF No. 262 at 9.)  Sterritt posits that this assertion is distinguishable from an argument that "he lied or caused others to lie but lacks culpability because he did so believing that Zona Energy, Inc. would be profitable in the end (no ultimate harm)" (ECF No. 262 at 9.)

Sterritt's assertion is a distinction without difference and must be rejected as such.  The notion that Sterritt's good faith belief regarding the profitability of the Zona Energy Scheme "undermines the government's assertion that he intended to defraud investors" is exactly the sort of argument that courts in this circuit have repeatedly rejected.  Sterritt's "good faith belief regarding . . . profitability" does not refute, and is not a defense to, the government's assertion that Sterritt intended to defraud investors by material misrepresentations or omissions.  Profitability, whether aspirational or actual, is not a defense to the concrete harm of knowingly "depriving a party of material information." *Watts*,

7

934 F. Supp. 2d at 471; *see also Ferguson*, 676 F.3d at 280 (the defendant's fraudulent scheme "may well have been proven beneficial to [] stockholders, but the immediate harm in such a scenario is the denial of an investor's right 'to control her assets by depriving her of the information necessary to make discretionary economic decisions'") (internal citation omitted).

Moreover, Sterritt's generalized argument about his "good-faith" defense is not tied to any evidence or examples of allegedly true or proper statements.  A defendant may only use evidence of his beliefs about the potential outcome of an investment to demonstrate a "good-faith belief in the truth of his statements or representations," *Watts*, 934 F. Supp. 2d at 461, not to assert a sweeping and unspecific "good faith" defense to any evidence of knowingly false or misleading statements that were alleged to have been made with the intent to defraud.  Sterritt's generalized argument that he acted in good faith, in light of substantial evidence of deliberate omissions and knowingly false statements, cannot be a defense to the allegation of an intent to defraud.

Accordingly, Sterritt is precluded from presenting evidence or argument regarding his "good-faith" belief in the perceived profitability of Zona Energy, or the basis for that perception, for the purpose of defending knowingly false or misleading statements or conduct.

Moreover, Sterritt is advised that the Court may provide the jury with a "no ultimate harm" instruction to clarify that any improperly proffered evidence or argument regarding Sterritt's belief that investors would ultimately reap profits from their investments does not excuse the denial of investors' right to make discretionary, informed decisions about their investments. *See e.g. United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016) ("[a] 'no ultimate harm' instruction . . . is proper where (1) there was sufficient factual predicate to necessitate the instruction, (2) the instruction required the jury to find intent to defraud to convict, and (3) there was no evidence that the instruction caused confusion."); *United States v. Leonard*, 529 F.3d 83, 91-92 (2d Cir. 2008) (finding "a proper predicate for the 'no ultimate harm' charge" where "[t]he record provide[d] evidence to support a finding that [the defendants] intended to deceive the investors" and the defendants improperly "highlighted their good faith belief that . . . there would be no ultimate harm to investors . . . and [that] the investors would be no worse off for not knowing the true allocation of resources.").

The government's motion in limine to preclude evidence or arguments regarding any purported belief of "no ultimate harm" to investors is, accordingly, **GRANTED**.

## II. The Government's Motion in Limine Seeking Admission of Contracts and Other Agreements as "Verbal Acts"

9

The government seeks admission of contracts and other agreements as "verbal acts," under Fed. R. Evid. 801(c), not for the truth of their contents, but to establish that Sterritt and others entered into the relevant contracts and agreements.  (ECF No. 258 at 9.)  This includes share purchase agreements, stock transfer agreements, debt instruments, lease purchase and transfer agreements, assignments of mineral rights, employment agreements, and consulting agreements.  (ECF No. 258 at 9-10.)  Sterritt does not object to the admission of contracts and agreements referenced by the government on the basis that such evidence is hearsay.  The parties agree that contracts and agreements submitted as "verbal acts" are excluded from the hearsay rule under Fed. R. Evid. 801(c).  Accordingly, the government's motion, as it relates to any anticipated objection to the admission of contracts and other agreements as verbal acts, on the basis of Fed. R. Evid. 801(c), is **GRANTED**.

Nevertheless, at the September 19, 2023 status conference, the Court declined to rule on the admissibility of each contract and agreement or to admit all contracts and agreements *en masse* at the time.  As noted by Sterritt, because admissibility of this type of evidence "turn[s] on characteristics of the particular items of evidence and the purpose for which it is offered," a ruling on admissibly absent specification from the government as to exactly which contracts it seeks to admit,

10

would have been premature.  (ECF No. 262 at 4-5) ("a definitive
ruling by this Court on admissibility would be premature before
the government at a minimum specifies what contracts, etcetera,
it will seek to introduce.")  *See also United States v. Ray*, 20-
CR-110 (LJL), 2022 WL 558146, at *4 (S.D.N.Y. Feb. 24, 2022)
(when "the government moves in limine for the admission of . . .
evidence [that is] not being offered for their truth and
therefore [does] not constitute hearsay . . . the defense is
entitled to object if it has a good faith basis and the Court
will not admit all of the evidence *en masse* unless there is
consent by the defense that it is admissible *en masse*.")

Subsequently, in his October 4, 2023 submission to the
Court, which outlined sixteen (16) categories of government
exhibits to which Sterritt objects (ECF No. 310), Sterritt does
not appear to object to any specific contracts or agreements.
Accordingly, as it relates to the contracts and agreements
included in the government's August 28, 2023 exhibit list (ECF
No. 292), the government's motion to admit the relevant
contracts and agreements as verbal acts is **GRANTED.**

**III. The Government's Motion in Limine to Preclude Defense
     Evidence or Argument Concerning the Defendants' Personal,
     Health, or Family Circumstances**

Pursuant to Fed. R. Evid. 401, the Court may admit evidence
if it is relevant, which is to say that the evidence "has [a]
tendency to make a fact more or less probable than it would

11

otherwise be without the evidence[] and the fact is of consequence in determine the action." The role of relevance in determining the admissibility of evidence is limited, however, by Fed. R. Evid. 403, which requires that otherwise relevant evidence be excluded if the probative value of the evidence "is substantially outweighed by a danger of . . . [*inter alia*] unfair prejudice, confusing the issues, [or] misleading the jury." Courts have broad discretion concerning the admissibility of evidence related to a defendant's personal, health, or family circumstances, but particularly where such evidence "has limited probative value . . . [and has] potential to engender sympathy in an inappropriate effort to excuse [a] defendant's commission of the charged offenses," such evidence may be excluded, pursuant to Fed. R. Evid. 403. *United States v. Miller*, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009).

The government requests that this Court preclude evidence of Sterritt's health issues or other personal circumstances, and asserts that such evidence is irrelevant because it "has no tendency to make any 'facts of consequence' more or less probable" and, even if such evidence "had some limited probative value, that value would be far outweighed by the danger of unfair prejudice[.]" (ECF No. 258 at 12.)

In response, Sterritt notes that he "will not make arguments to the jury or offer evidence about [his] health to

gain sympathy.  Nor will [he] invite the jury to find [him] not guilty based on 'personal' or 'family circumstances.'"  (ECF No. 262 at 10.)  However, Sterritt notes two possible exceptions.

First, Sterritt states that because "the government has prosecuted [his] ex-wife, Robyn Straza, for her purported role in some of the charged offenses[,]" if Sterritt were to testify at trial, "he would by necessity discuss Ms. Straza's involvement in the circumstances surrounding the formation of Zona Energy, Inc., and related entities."  (ECF No. 262 at 10.) To the extent Sterritt seeks to testify about the involvement of his ex-wife and former co-defendant, Robyn Straza, in the formation of relevant corporate entities, such testimony would be relevant, given Straza's alleged knowledge of and participation in the alleged conduct.  The government does not appear to object to Sterritt's proposed limited exception to the preclusion of information related to his personal, health or family circumstances.

Second, Sterritt asserts that "if the government argues that Mr. Sterritt set up trusts for a nefarious purpose, [he] would seek to introduce evidence that he did so for estate-planning purposes in light of existing health problems."  (ECF No. 262 at 10-11.)  The government objects to this exception, noting that Sterritt's "health issues are beside the point, and [that] he can argue the trusts were for 'estate-planning

13

purposes' without reference to health problems that are intended
to invite the jury's sympathy and nullification."  (ECF No. 273
at 10.)

With the exception of testimony and evidence related to
Straza's participation in the alleged offenses, evidence of
Sterritt's personal, health, or family circumstances carries too
great a risk of unfair prejudice, confusing the issues and
misleading the jury.  These risks are not outweighed by the
probative value of such evidence.  Accordingly, pursuant to Fed.
R. Evid. 401 and 403, Sterritt may not refer to evidence of his
personal, health, or family circumstances to explain or rebut
evidence related to the formation and use of trusts in the
course of the alleged fraudulent schemes.  He may argue that the
trusts were for estate-planning purposes without reference to
his personal, family, or health circumstances.  The government's
motion in limine to preclude evidence of Sterritt's health,
family, or personal circumstances is **GRANTED**.

## IV.   The Government's Motion in Limine to Preclude Evidence or Arguments of Selective Prosecution

The government seeks preclusion of evidence or arguments
alleging selective prosecution, asserting that arguments related
to the government's motives and charging decisions are
irrelevant and unfairly prejudicial.  Sterritt only opposes this
motion insofar as he asserts that he should be able to cross-

14

examine Edward Roush in connection to any false statements made by Roush and to demonstrate Roush's bias against Sterritt. Sterritt's objection does not appear to relate, on its face, to the government's arguments regarding selective prosecution.  In any case, the government has represented that it does not intend to call Roush as a witness.  Accordingly, this issue is **MOOT**.

## V.   The Parties' Cross-Motions in Limine Regarding Evidence or Arguments that Sterritt Relied on Advice of Counsel

In asserting an advice of counsel defense, a defendant must show that: (1) before taking the relevant action, he "honestly and in good faith [sought the] advice of a lawyer as to what he may lawfully do"; (2) the defendant "fully and honestly [laid] all the facts before his counsel"; and (3) he "in good faith and honestly follow[ed] such advice, relying upon it and believing it to be correct . . . [and] lawful." *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997) (citing *Williamson v. United States*, 207 U.S. 425, 453 (1908).  A defendant is entitled to assert such a defense "only if there are sufficient facts in the record to support the defense[,]" *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (internal citations omitted), and "[e]ach requirement must be satisfied." *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012).  The issue of an advice-of-counsel defense "is not for the jury's consideration *at all* absent some evidence of the required facts.

15

Whether that burden is met is thus, in the first instance, for the court to decide." *Scully*, 877 F.3d at 477 n.5 (emphasis in original).

Because an advice of counsel defense must necessarily arise out of an attorney-client relationship, a defendant must, as a preliminary matter, establish the existence of an attorney-client relationship during the relevant time period. Establishing an attorney-client relationship between an attorney and the corporate entities at issue does not suffice to meet the requirement that a defendant relied on the advice of his attorney. *See United States v. Atias*, No. 14-cr-403 (DRH), 2017 WL 563978, at * (E.D.N.Y. Feb. 10, 2017) ("all available information indicates that the [] attorney represented [the entity at issue], not defendants. Accordingly the term 'advice of counsel' should not be employed in referring to [the defendant]. Doing so would be legally inappropriate and likely to mislead the jury.")

### A. Edward Roush

In its July 21, 2023 motions in limine, the government asked this Court to preclude evidence that Sterritt relied on the advice of counsel with respect to disbarred attorney, Edward Roush. Specifically, the government argued that Sterritt should not be permitted to argue that he relied on advice from Roush to use the "Richard Richman" alias because Roush was not his

16

attorney, or anyone's attorney, after being disbarred in 2005.
Sterritt does not object and states that he "does not intend to
argue reliance-on-counsel with respect to Edward Roush."  (ECF
No. 262 at 7.)  The parties agree that no attorney-client
relationship existed between Sterritt and Roush during the
relevant time period.  Accordingly, this issue, as it relates to
Roush, is denied as **MOOT**.

### B. Pittman

At the September 19, 2023 oral argument Sterritt indicated
that notwithstanding the parties' agreement that no attorney-
client relationship existed between Sterritt and Roush during
the relevant time period, Sterritt intended to assert an advice-
of-counsel defense with respect to advice he purportedly
received from former co-defendant, James Christopher Pittman.
Sterritt previewed this argument in his July 21, 2023 motion to
sever, although his discussion of Pittman was made in the
context of his assertion that Pittman "would essentially
function as a second prosecutor at a joint trial" because
Pittman would likely argue that [Sterritt] is lying" and that
"Pittman provided no [] legal advice" to Sterritt regarding
Sterritt's disclosure requirements with respect to his past
conviction for securities fraud.  (ECF No. 257-2 at 12.)
Sterritt contends that "he sought legal advice from Mr. Pittman
as to whether [he] had to disclose his past conviction to

potential investors" and that Pittman "advised [him] that he did not have anything to be concerned about regarding his past criminal history from a disclosure standpoint." (ECF No. 257-2 at 8.) Sterritt further asserted that "Pittman knew what was going on at Zona Energy, Inc. and related entities and approved of how the business was being conducted." (ECF No. 257-2 at 8.) In his September 26, 2023 letter submission to the Court (ECF No. 304), Sterritt disclosed his "intention to testify that before he used the name Richard Richman in connection with the charged conduct, he spoke with . . . Christopher Pittman[.]" (ECF No. 304 at 1) (internal emphasis omitted).

Despite Sterritt's contentions, and after two rounds of briefing and oral argument, Sterritt still has not provided this Court with evidence of an attorney-client relationship relevant to the alleged legal advice at issue in this case, nor has Sterritt proffered evidence to support an advice-of-counsel defense with respect to Pittman. In particular, Sterritt has not demonstrated that he honestly and completely disclosed facts relevant to a request for the alleged legal advice, that the alleged legal advice was proffered by Pittman, and that Sterritt relied upon and followed the alleged legal advice in good faith. Sterritt points to no evidence that Pittman represented either him or any of the relevant entities in the alleged scheme, beyond Pittman's capacity as a real estate and contracts

18

attorney.  Sterritt points to several emails where Pittman is
referred to as Sterritt's attorney in the context of contract-
related discussions, but the emails only serve to substantiate
Pittman's role as a real estate and contracts attorney.  *See*
(ECF No. 304-2 at 6) (July 30, 2018 email from Pittman:
"attached is a revised draft of the contract amendment, which I
have modified"); (ECF No. 304-2 at 12) (Sept. 13, 2018 email
from Pittman "See email below and attachments . . . You should
have all the lease documents.") (ECF No. 304-2 at 15) (Jun. 1,
2018 email from Pittman: "attached is a copy of the ROFR
agreement").  Importantly, Pittman has explicitly disclaimed the
existence of the type of attorney-client relationship that
Sterritt now asserts, stating in an August 2, 2020 text to
Sterritt "You were never my client. You only engage lawyers to
perpetuate your fraud[.]"  (ECF No. 261-1 at 2.)

Moreover, even if Sterritt could establish the existence of
an attorney-client relationship for the purposes of his advice-
of-counsel defense, Sterritt has not satisfied the elements of
an advice-of-counsel defense with respect to the disclosure of
his criminal conviction to prospective investors and the use of
an alias, Richard Richman, to evade detection of his background
by prospective investors.  Sterritt alleges that he "told
[Pittman] that [he] used the name Richard Richman in his
business dealings . . . [and that] he had a past conviction for

conspiracy to commit securities fraud, tax fraud and money
laundering[.]" (ECF No. 304 at 1.) Sterritt further alleges
that he "asked [Pittman] whether he had to disclose his
conviction to investors . . . and whether he could use the name
Richard Richman[.]" (ECF No. 304 at 1.) Sterritt's declaration
does not identify when, if ever, he engaged Pittman to provide
legal services for the transactions at issue in this case, when
Pittman purportedly advised him that his previous conviction
"did not have to be disclosed to investors," or when Pittman
told him that "there was no legal impediment to [] using [the]
name [Richard Richman] in [] business dealings[.]" (ECF No.
274-1.) Sterritt's declaration also fails to allege that
Sterritt relied on and followed Pittman's advice in good faith.
Nor could Sterritt make such a claim because Sterritt began
using the Richard Richman alias as early as 2015 and used the
Richard Richman alias to solicit investors in connection with
Zona Energy prior to meeting Pittman. (ECF No. 261-2.) Pittman
also reminded Sterritt via text message on August 14, 2020 that
he "warned [Sterritt]" that Sterritt was committing fraud,
noting that "every[] investor will say they bought your shares
to benefit Zona irrespective of whatever you said in your
contract-fraud defeats contractual terms any . . . day." (ECF
No. 261-3 at 2.) Of course, Pittman's admonition that Sterritt

was committing fraud is the exact opposite of legal advice sanctioning Sterritt's conduct as legally permissible.

Furthermore, Sterritt is precluded from asserting a generalized advice-of-counsel defense based on the assertion that Pittman "knew what was going on . . . and approved of how the business was being conducted." (ECF No. 257-2 at 8.) Sterritt points to no authority for the proposition that an advice-of-counsel defense can be substantiated by an allegation that an attorney was generally aware of unlawful conduct. Indeed "a businessman who knows that [] factual representations are untrue [cannot] screen himself by trying to rely on [an] advice of counsel [defense]." *United States v. King*, 560 F.2d 122, 132 (2d Cir. 1977). Sterritt does not point to any evidence, with respect to his assertions about Zona Energy's general business operations, that he sought affirmative advice from Pittman and that he "fully and honestly [laid] all the facts before [Pittman]." *Evangelista*, 122 F.3d at 117*; see also Colasuonno*, 697 F.3d at 181 (find that the defendant's "advice-of-counsel defense failed at the second step because he did not advise his [] attorney of the [relevant] fact[s]"). Absent these specific showings, Sterritt may not shield himself from liability for criminal conduct based on the general presence or presumed awareness of attorneys during the course of the alleged scheme.

### C. Andrew Stack and other attorneys

In his October 4, 2023 submission, Sterritt referred to a new attorney, Andrew Stack, who Sterritt alleges he also consulted before representing himself as "Richard Richman" to prospective investors.  (ECF No. 304 at 1.)  Sterritt indicated that he "would [also] seek to show that Zona [Energy] and related entities consulted with, retained, and followed the advice of numerous attorneys[,]" including seven (7) lawyers listed in Sterritt's submission.  (ECF No. 304 at 2.)  In support of his assertion regarding Andrew Stack and the seven (7) additional lawyers, Sterritt points to a number of exhibits, including Ex. B-03, which represents an unsigned engagement letter describing Andrew Stack's role as general counsel to Zona Energy and other related entities.  (ECF No. 304-2 at 8-10.) The engagement letter explicitly states that Stack's "duties are owed to the Companies, and not [Sterritt] personally."  (ECF No. 304-2 at 8.)  The engagement letter also appears to be unsigned, and the government has proffered evidence suggesting that it may not have been executed.  *See* (ECF No. 313 at 2 n.3) ("Stack later complained that Sterritt never accepted the terms proposed in the engagement letter, suggesting they may not have come to any agreement about the scope of Stack's representation); *see also* (ECF No. 313-1 at 3) (Sept. 24, 2018 email from Andrew Stack:  "Richard asked me to send over yet another engagement

agreement, which I did . . . he would never talk about my agreement or respond to [my] messages about the agreement . . . I finally told him that I wasn't doing any more work unless and until my agreement was signed.")

Putting aside the evidence suggesting that Stack did not represent Sterritt personally, Sterritt has proffered no evidence that he sought Stack's advice about what he lawfully could do with respect to any of Sterritt's alleged wrongdoings, that he laid out all relevant facts regarding the alleged wrongdoings before Stack, or that he received advice from Stack which he relied upon and followed in good faith believing such advice to be lawful and correct.  The fact that Stack may have represented entities associated with the alleged scheme cannot absolve Sterritt from the numerous allegations of unlawful conduct, including misappropriation of investor funds and material misstatements and omissions to investors.

Moreover, far from corroborating Sterritt's assertion that Stack provided Sterritt with legal advice that he should use an alias to hide his identity and past criminal conviction from prospective investors, Stack appears to admonish Sterritt for precisely this conduct.  *See* (ECF No. 313-3 at 5) (undated text from Andrew Stack to Chris Pittman: "the fact that [Sterritt] failed to disclose his involvement is securities fraud, yet again"); (ECF No. 313-1 at 3) (Sept. 24, 2018 email from Andrew

23

Stack to Chris Pittman and others:  "Eventually, the US Atty and SEC will get involved and Richard/Dale will most likely face fraud and securities charges, and if so, it seems relatively clear, especially given his background in doing the EXACT SAME THING he was convicted of before, that things will end up exactly as they did before[.]") (emphasis in original).

Similarly, Sterritt provides no evidence regarding the advice he purportedly sought from seven (7) additional attorneys; John Little, Carl Ranno, Robert Crabb, Joseph Emas, Richard Dahlson, James Shields, and Waller Landsen.  (ECF No. 304 at 2.)  Sterritt asserts that each of the seven (7) attorneys "served as counsel to Zona Energy and related entities" and that there existed "an attorney-client relationship between Zona Energy and related entities and those counsel."  (ECF No. 304 at 2.)  Again, Sterritt does not claim any of the attorneys represented him.  Nor does Sterritt describe or point to any evidence of engagements of the attorneys in connection with the transactions at issue, legal advice purportedly sought from the attorneys, factual information allegedly provided to the attorneys, or legal advice received from the attorneys and followed, by Sterritt, as directed.  Having alleged the existence of an attorney-client relationship, Sterritt appears to stop there.  An advice-of-counsel defense, however, calls for more.  Sterritt does not

24

meet "each [or any] requirement" of the advice-of-counsel
defense with respect to any of the nine (9) attorneys, including
the additional attorneys listed in his October 4, 2023
submission.  *Colasuonno*, 697 F.3d at 181.

Sterritt's motion in limine to assert an advice-of-counsel
defense, based on the evidence proffered, with respect to
Pittman, Stack, Little, Ranno, Crabb, Emas, Dahlson, Shields,
and Landsen is **DENIED**.

The Court notes that Sterritt has been given multiple
opportunities to proffer evidence that substantiates his
proposed advice-of-counsel defense.  Notwithstanding these
opportunities, the evidence required to meet the elements of an
advice-of-counsel defense remains absent and, instead, the list
of attorneys Sterritt claims fall under the umbrella of his
purported advice-of-counsel defense continues to grow.  Though
the Court will not preclude Sterritt from furnishing evidence,
albeit belatedly, to substantiate an advice-of-counsel defense,
Sterritt is cautioned that any tactics resulting in undue delays
or burdens upon the Court, the parties, or the jury at trial
will not be tolerated.

## VI. The Government's Motion in Limine to Preclude Evidence or Argument Concerning the Punishment or Collateral Consequences of a Conviction

The government seeks preclusion of evidence or argument
concerning the possible punishment or collateral consequences of

a conviction for Sterritt.  Sterritt does not object, but asks
this Court to rule that the government should "not be permitted
to make [the] argument to the jury" that his  interest in the
outcome of the case makes him "more likely to lie than any other
witness."  (ECF No. 262 at 8.)  Sterritt's opposition to any
suggestion that he is "more likely to lie," is based on a
mischaracterization of the government's argument.  To the extent
the government seeks to cross-examine either Sterritt, or any
other witness, about the potential consequences of a conviction
in order to impeach his credibility, such questioning is limited
by well-established precedent that a defendant's interest in the
outcome of a case cannot be suggested to create a greater
proclivity or motivation to lie.  *See United States v. Gaines*,
457 F.3d 238, 247 (2d Cir. 2006) ("the fact that a witness is
the defendant 'creates an interest great than that of any other
witness, and . . . [may] affect[] the question of credibility,'"
however "there [may not] be [any] declaration or intimation that
the defendant has been untruthful in his testimony" based on his
"deep personal interest") (citing *Reagan v. United States*, 157
U.S. 301, 305-11 (1895)).  Accordingly, the government may raise
the fact of Sterritt's greater interest in the outcome of the
case, as compared to other witnesses, in connection with his
credibility on cross-examination, should he decide to testify.
The government may not, however, intimate that Sterritt's

interest in the case "creates a motive for [Sterritt] to testify falsely." *Gaines*, 457 F.3d at 247.  The government's motion in limine to preclude evidence or arguments regarding collateral consequences of a conviction is **GRANTED**.

## VII. The Government's Motion in Limine to Admit Statements of Co-Conspirators

The government provides notice of its intent to introduce certain co-conspirator statements, including statements to victim-investors concerning the use of their investment funds, communications with victim-investors concerning share purchase agreements, communications among co-conspirators regarding Zona Energy's financial condition, communications relating to the ownership of Sterritt-controlled entities, communications related to the use of investor proceeds, and communications regarding SEC subpoenas.  (ECF No. 258 at 27-28.)  The government asserts that it is "merely providing notice" and does not seek an affirmative ruling on any co-conspirator statements at this time.  (ECF No. 258 at 28.)  In response, Sterritt acknowledges that "[t]here is no question that statements made by co-conspirators during the course of and in furtherance of a conspiracy are excluded from the definition of hearsay," pursuant to Fed. R. Evid. 801(d)(2)(E) and agrees with the government that a specific ruling on each co-conspirator statement is premature at this time.  (ECF No. 262 at 14.)

Subsequently, the government filed a list of exhibits on August 28, 2023 (ECF No. 292) and Sterritt filed objections to the government's exhibit list on October 4, 2023.  (ECF No. 310).  The parties are advised to confer and attempt to resolve any disputes regarding co-conspirator statements prior to trial to avoid sidebars, delays, and interruptions during trial.  The Court respectfully requests that the parties file a joint status update regarding any disputes regarding co-conspirator statements, if any, by Monday, November 13, 2023, and reserves a ruling until the parties have submitted the requested update to the Court.

## VIII.   The Government's Motion in Limine to Admit Pittman's Proffer-Protected Statements

The government provided notice of its intent to introduce proffer-protected statements made by James Christopher Pittman if Pittman were to make arguments or provide evidence, at trial, that contradict those proffer statements.  As previously noted, on October 13, 2023, Pittman entered a plea of guilty at a change of plea hearing before this Court.  Moreover, Pittman is not on either party's witness list.  Accordingly, the government's motion with respect to Pittman's proffer-protected statements appears to be **MOOT**.

## IX.  Sterritt's Motion to Sever

On July 21, 2023, Defendant Sterritt file a motion to sever the trial scheduled to begin on November 27, 2023 from that of his co-defendant at the time, James Christopher Pittman.  As previously noted, on October 13, 2023, Pittman entered a plea of guilty at a change of plea hearing before this Court. Accordingly, Sterritt's motion to sever is **MOOT**.

### X.   Sterritt's Request that the Court Decline to Provide the Jury with a Copy of the Indictment

The Second Circuit has "long recognized that trial courts may, in their discretion, 'permit the jury to take a copy of the indictment into the jury room, after taking care to instruct the jury that the indictment is not to be considered evidence.'" *United States v. Esso*, 684 F.3d 347, 350 (2d Cir. 2012) (internal citation omitted).  As noted by Sterritt, however, the practice of permitting the jury to review the indictment "is hardly mandatory, and not all trial judges follow it, particularly when the indictment does not merely state the statutory charges against the defendant, but additionally contains a running narrative of the government's version of the facts of the case[.]"  *Esso*, 684 F.3d at 352 n.5.

In conjunction with his July 21, 2023 motion to sever, Defendant Sterritt also requested that the Court exercise its discretion to decline to provide the jury with a copy of the indictment during deliberations.  Sterritt argues that 38-page

29

speaking indictment exceeds the requirements of Fed. R. Crim. P. 7(c)(1) and is unfairly prejudicial to Sterritt because "[e]ssentially, it reads like a summation[.]"  (ECF No. 252-2 at 21-22.)  In particular, Sterritt points to headings within the Indictment, such as "The Corrupt Companies and Related Entities," as unfairly prejudicial.  (ECF No. 257-2 at 20-21.) The government asks that "[t]he Court follow its standard practice regarding the provision of the indictment to the jury" and notes that "[t]he indictment may be of particular use to the jury in a complex fraud case like this one[.]"  (ECF No. 261 at 23.)

This Court's customary practice is to provide the jury with a copy of the indictment in a complex securities fraud case, and the Court currently intends to follow the same practice in the instant case.  The indictment, particularly in a complex securities fraud case involving allegations of multiple, intricate fraudulent schemes, can be a helpful guide to the jury in understanding the government's allegations and identification of the names and relationships of various individuals and entities that are entangled in a complex web of transactions. In such cases, this Court ensures any risk of unfair prejudice is mitigated by proper jury instructions that inform the jury that they are not to regard the indictment as evidence.  The Court intends to give such an instruction here.  Moreover, the

Court directs that the headings in the indictment be amended to eliminate conclusory language.  The Court further requests that Sterritt and the government work together to make proposed redactions or modifications to minimize unnecessarily suggestive or potentially prejudicial descriptive terms, such as the one identified by Sterritt in his July 21, 2023 motion (*see, e.g.* "The Corrupt Companies and Related Entities").  (ECF No. 252-2 at 20-21.)  The parties shall submit a proposed copy of the Indictment within one week of this Order and the Court reserves a ruling on this issue until that time.

### XI.  The Government's Motion in Limine Concerning the Testimony of an Undercover Agent

Pursuant to the Confrontation Clause of the Sixth Amendment to the U.S. Constitution, a defendant in a criminal proceeding has the right to be confronted with the witnesses presented against him.  *See Pointer v. Texas*, 380 U.S. 400, 404-05 (1965) (the right to "confrontation and cross-examination . . . have ancient roots . . . [that] find expression in the Sixth Amendment[.]").  This constitutional right necessitates an opportunity, for the accused, to cross-examine a witness that testifies against him, including to impeach a witness for bias. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding that "denial of a defendant's opportunity to impeach a witness for bias" is "constitutionally improper").  The right to cross-

examine witnesses, however, is not absolute, and cross-examination may be curtailed to accommodate other, legitimate interests at trial.  The Court retains wide latitude to impose reasonable limits on cross-examination, including limits "based on concerns about, among other things, a witness's safety." *Washington v. Walsh*, No. 08-cv-6237 (DAB), 2010 WL 423056, at *6 (S.D.N.Y. Feb. 5, 2010).  The burden "to demonstrate legitimate reasons for a limitation on cross-examination" rests on the prosecution.  *Walsh*, 2010 WL 423056, at *6.

The government moves in limine to permit a retired Federal Bureau of Investigation ("FBI") undercover agent identified by the alias, "Charlie," to testify under his alias, which he used in the course of the government's investigation in the instant case.  (ECF No. 322 at 1.)  The government further requests that Sterritt be prohibited from inquiring into Charlie's true identity or other, unrelated undercover investigations during cross-examination.  (ECF No. 322 at 1.)  Sterritt opposes the government's motion.  Sterritt acknowledges that "a sufficient showing that a witness would be endangered if he were required to provide background information could justify permitting a witness to testify using an alias."  (ECF No. 324 at 1.)  Sterritt argues, however, that absent further evidence from the government regarding "Charlie's role as a consultant" including "where he works, what type of consulting work he engages in, how

32

frequently he does this part-time consulting work" and an explanation of "how Charlie would be endangered were he required to use his name when testifying[,]" Sterritt's right to confront Charlie, pursuant to the Sixth Amendment of the U.S. Constitution, would be unduly burdened.  Sterritt fails to explain how either the requested details or Charlie's identity are relevant or would serve to impeach Charlie's credibility as a witness.

The government has demonstrated legitimate and compelling reasons for its request, including protecting the integrity of its investigations, to protect Charlie's safety and Charlie's continued effectiveness as an undercover agent.  In a sealed, *ex parte* submission (ECF No. 325), the government details the history of Charlie's FBI service, the scope of his current consultative engagement with the FBI, and the nature of the investigations in which he is currently involved in an undercover capacity, including with respect to timing and subject matter. The government interest in protecting the safety of undercover officers and "in maintaining [the] continued effectiveness of an undercover officer is an extremely substantial interest." *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997).

Notably, Charlie will be using the same alias that Sterritt came to know him by during the course of the government's

investigation, Charlie will be present in the courtroom for cross-examination by Sterritt's counsel, and Charlie's recorded discussions with Sterritt and Sterritt's co-conspirators have been provided to Sterritt for his review.  (ECF No. 322 at 3.)

Courts in this Circuit have held that legitimate justifications for placing moderate limitations on cross-examinations by permitting an undercover agent to testify without identifying himself by his true name can include the fact that an undercover agent is "still pursuing undercover work[,]" *Walsh*, 2010 WL 423056, at *7, and the need to protect an undercover agent's safety.  *Nelson v. Crowley*, No. 07-cv-849 (RJS), 2009 WL 498909, at *4 (S.D.N.Y. Feb. 23, 2009) ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [] cross-examination based on concerns about . . . the witness' safety") (internal citation omitted).

In light of the government's representations that Charlie continues to engage in ongoing investigations as an undercover FBI consultant, the government's representation that exposure of Charlie's identity could compromise his safety, Charlie's 23-year history of interacting with various suspects, targets and potentially defendants as an undercover FBI agent, as well as the limited probative value or of Charlie's true identity in this case, the Court finds that "allowing the Undercover to

34

testify anonymously . . . [does] not offend [the] principle[s]" of the Confrontation Clause of the Sixth Amendment.  *Crowley*, 2009 WL 498909, at *5.

The government's motion in limine to permit Charlie to testify by alias, and for a narrow limitation of cross-examination with respect to matters that might reveal Charlie's true identity and the nature of any unrelated undercover investigations is **GRANTED.**

<u>**CONCLUSION**</u>

For the foregoing reasons, the government's motions in limine to preclude evidence or arguments of any purported belief regarding "no ultimate harm" to investors, to admit contracts and other agreements as verbal acts, to preclude evidence or arguments related to Sterritt's personal, health, and family circumstances, to preclude evidence or arguments regarding the collateral consequences of a conviction, and to permit the testimony of an undercover agent by his alias are **GRANTED.**  At this time, the Court reserves, as **PREMATURE,** a ruling on, but is likely to grant, the government's motions in limine to admit evidence of co-conspirator statements.  The Court also reserves, as **PREMATURE,** a ruling on, but is likely to deny, Sterritt's request that the Court decline to provide the jury with a copy of the Superseding Indictment.  Sterritt's motion in limine to assert an advice-of-counsel defense, based on the evidence

35

proffered, is **DENIED**.  All other motions, including the
government's motion to preclude evidence or arguments regarding
selective prosecution and to admit proffer-protected statements
by Pittman, as well as Sterritt's motion to sever, are denied as
**MOOT**.

As noted earlier, the parties are strongly encouraged to
confer and attempt to resolve any disputes regarding co-
conspirator statements, any outstanding objections to the list
of exhibits, as well as any other disputes regarding the items
in Section 3 of the Court's April 25, 2023 Pre-Trial Scheduling
Order (ECF No. 224) prior to trial to avoid sidebars, delays,
and interruptions during trial.  The parties shall file a joint
status update advising the Court of any outstanding disputes or
objections by Monday, November 13, 2023.  The parties are
further directed to notify the Court of any proposed redactions
to the indictment for the purposes of submitting a copy of the
indictment to the jury by November 15, 2023.

**SO ORDERED.**
Dated: November 8, 2023
       Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

36